# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

FILED

February 4, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ROBERT J. MARRINER, III,**
**Claimant Below, Petitioner**

**vs.)    No. 14-1308** (BOR Appeal No. 2049524)
            (Claim No. 2007224965)

**PENNZOIL-QUAKER STATE COMPANY,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Robert J. Marriner, III, by Patrick K. Maroney, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Pennzoil-Quaker State Company, by James W. Heslep, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated November 24, 2014, in which the Board affirmed a May 29, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's August 6, 2013, decision denying authorization for chiropractic treatment three times a week for four weeks and a referral to a neurologist. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Marriner, production line operator for Pennzoil-Quaker State Company, was injured on February 23, 2007, while pushing, pulling, lifting, and restacking four gallon boxes and oil pallets. A report from Scott A. Owens, D.C., his treating physician, showed that he diagnosed a cervical sprain on March 14, 2007. On March 20, 2007, Mr. Marriner had an MRI of his cervical spine. The impression was unremarkable. On April 10, 2007, Mr. Marriner filled out a report of injury for his neck.

1

At some point in time Mr. Marriner stopped treating with Dr. Owens and started treating with Joel D. Siegal, M.D., and Chandler M. Kohli, M.D. Dr. Siegal performed an examination on May 10, 2007. Dr. Siegal reviewed the March 20, 2007, cervical spine MRI. He interpreted the MRI to show a left C6-7 disc protrusion. He recommended conservative treatment, which included a Medrol Dose Pack, Naprosyn 500mg, Robaxin 750mg, and physical therapy. On August 2, 2007, Mr. Marriner was seen by Dr. Kohli for a follow-up. The arm pain was better following physical therapy. Mr. Marriner's main complaint was right sub occipital pain and discomfort which was reproducible with palpation consistent with occipital neuralgia. Dr. Kohli recommended home cervical tractions, continued exercise and medication, and perhaps an occipital nerve block.

On June 9, 2008, Mr. Marriner underwent a nerve conduction study. The impression was electrodiagnostic evidence of moderate to severe left carpal tunnel syndrome and mild to moderate right carpal tunnel syndrome. There was no electrodiagnostic evidence consistent with a cervical radiculopathy, brachial plexoplasty, or peripheral neuropathy of the left upper limb. Records dated October 4, 2010, from Prima Health Care, LLC, indicated Mr. Marriner presented with complaints of neck pain. The doctor diagnosed a strain of the neck and recommended he continue to take Mobic as needed and return in three months.

On August 23, 2012, Joseph M. Grady II, M.D., conducted an independent medical evaluation. Dr. Grady opined that Mr. Marriner was at his maximum degree of medical improvement and suffered no ratable impairment. Then on March 27, 2013, Mr. Marriner was seen by Dr. Owens again. Mr. Marriner complained of pain in the neck and constant headaches. After examination, Dr. Owens determined that his current symptoms were a result of a lack of treatment. He diagnosed a cervical sprain/strain and a cervical disc bulge. He treated Mr. Marriner with hydro collator, electric stimulation, and adjustment of the cervical region. He recommended conservative care. Dr. Owens also submitted an authorization for three chiropractic treatments three times a week for four weeks, and a referral to a neurologist. On June 24, 2013, Mr. Marriner underwent another MRI of the cervical spine. The impression was mild to moderate degenerative disc disease with C5-6 disc protrusion with inferior migration causing mild to moderate central canal stenosis.

On August 3, 2013, Ronald J. Fadel, M.D., performed a records review. He reviewed Mr. Marriner's treatment to date. Dr. Fadel recognized a three year gap in treatment where Mr. Marriner worked without restrictions. He noted the accepted diagnosis is cervical sprain, and opined that discopathy and or neuropathy was not related and does not fall under the umbrella of the old claim coverage. He explained that the February 23, 2007, injury could not have caused the pathology seen on the June 24, 2013, MRI because the March 20, 2007, MRI, which was taken after the compensable injury, was unremarkable. Based upon Dr. Fadel's report, the claims administrator denied the August 6, 2013, request Dr. Owens submitted for authorization of three chiropractic treatments three times a week for four weeks and a referral to a neurologist. Mr. Marriner protested. On October 30, 2013, Dr. Owens completed a medical statement indicating that he believed Mr. Marriner's condition was causally related to a work injury and chiropractic treatment was reasonable and necessary. On February 4, 2014, Mr. Marriner was deposed. He

stated that his symptoms have gotten a lot worse since the original injury. Between 2007 and 2009 he saw Dr. Owens three to four times, and he provided treatment for his neck, but could not set up a treatment program because every authorization request was denied. He had an MRI in 2007 and another in 2013. Dr. Owens referred him to a neurologist who in turn referred him to the neurosurgeon, Dr. Siegal. Dr. Siegal showed him some exercises he could do and has since moved out of state. Mr. Marriner stated he would like to continue treatment with Dr. Owens for chiropractic treatment.

The Office of Judges determined that Mr. Marriner did not show that physical therapy was medically related and reasonably required to treat his cervical sprain. The Office of Judges recognized that Dr. Owens believed chiropractic treatment was reasonable and necessary due to alignment issues of the cervical spine causing increased pressure on the disc herniation. The Office of Judges also noted that this finding was consistent with Mr. Marriner's statements. In his February 4, 2014, deposition Mr. Marriner testified that his symptoms have gotten a lot worse since the original injury. The Office of Judges determined that his need for physical therapy was not related to his cervical sprain suffered on February 23, 2007. After the cervical spine strain, Mr. Marriner had an MRI on March 20, 2007, which did not reveal any injury. The Office of Judges agreed with Dr. Fadel, who opined that if Mr. Marriner suffered a cervical disc herniation that it would have shown up on the 2007 MRI. However, on June 24, 2013, an MRI showed a disc herniation of the C5-6 level. Because the herniation was the reason for the physical therapy request and it is not a compensable condition, the Office of Judges denied medical authorization. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

We agree with the Office of Judges and Board of Review. Mr. Marriner has failed to show that his physical therapy is medically related or reasonably required to treat his 2007 cervical sprain. Dr. Owens requested physical therapy because of alignment issues of the cervical spine, which caused increased pressure on his disc herniation. The disc herniation is not related to the 2007 injury. If it were related to the February 23, 2007, injury then it would have been visible on the March 20, 2007, MRI. Because the request for physical therapy is predicated on the treatment of the disc herniation, which is not a compensable condition, the Office of Judges and Board of Review were not in error for rejecting the treatment.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  February 4, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II